IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **DARRYL PERNELL BUTLER,** : | |
| : | |
| **Plaintiff,** : | |
| VS. : | |
| : | NO. 5:22-CV-00149-TES-CHW |
| **DOCTOR ELLEN H YANKELLOW,** : | |
| *et al.*, : | |
| : | |
| **Defendants.** : | |
| _____ : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, Plaintiff Darryl Pernell Butler, an inmate currently incarcerated at the Central State Prison in Macon, Georgia, has filed a proper and complete motion for leave to proceed *in forma pauperis* (ECF No. 4). For the reasons discussed below, Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**, and Plaintiff's Eighth Amendment medical treatment claims concerning his hypertension shall proceed against Defendants Thorpe, Collins, Smith, Calloway, and Hargrove. Plaintiff's Eighth Amendment medical treatment claims concerning his hand injury shall also proceed against Defendant Thorpe. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Plaintiff has moved for leave to proceed without paying the filing fee in this case. Federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is frivolous or malicious or fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999). Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury. *Id.*

A review of court records on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") database reveals that Plaintiff has filed several federal lawsuits and that more than three of his actions or appeals have been dismissed as frivolous, malicious, or for failure to state a claim. *See, e.g., Butler v. Brown*, Case No. 1:96-cv-0087-WLS, ECF No. 3 (M.D. Ga. May 23, 1996) (dismissed as frivolous); *Butler v. Kelso*, Case No. 1:95-cv-0190-WLS, ECF No. 2 (M.D. Ga. Oct. 20, 1995) (dismissed as frivolous); *Butler v. Casterline*, No. 1:03-cv-0112-WLS, ECF No. 4 (M.D. Ga. Sept. 26, 2016) (dismissed as frivolous); *see also* Order Dismissing Compl., ECF No. 5 in *Butler v. Cobb*, Case No. 7:16-cv-00235-HL-TQL (M.D. Ga. Feb. 14, 2017) (dismissing pursuant to 28 U.S.C. § 1915(g)). Plaintiff may therefore not proceed *in forma pauperis* unless he alleges he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To qualify for the "imminent danger" exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). Complaints of past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Plaintiff's claims arise from his treatment at the Central State Prison ("CSP") beginning on or about January 12, 2021 and continuing until the present day. Compl. 5, ECF No. 1. Plaintiff alleges that he suffers from chronic hypertension for which he requires daily medication, and he contends that he has had repeated difficulties obtaining timely refills for this medication. *See, e.g.,* Attach. 1 to Compl. at 7, ECF No. 1-1 (alleging that he has filed "over a dozen complaints about my blood pressure medication not being issued on time"). As a result, Plaintiff states that he regularly suffers from various symptoms of high blood pressure, including headaches, dizziness, and blurred vision. *See, e.g., id.* at 3. In addition, Plaintiff contends that his high blood pressure has caused serious health problems in the past, including a stroke, and that the lack of medication causes "wear and tear on plaintiff's kidney and heart." *Id.* at 14-15. These allegations are sufficient to show that Plaintiff may be in imminent danger of serious physical injury within the meaning of

3

§ 1915(g). Because Plaintiff's submissions show he is unable to pay the cost of commencing this action, his application to proceed *in forma pauperis* (ECF No. 4) is **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has sufficient assets, he must pay the filing fee in a lump sum. If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available. Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4). In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

### I.    Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee. The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration. It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution

until the $350.00 filing fee has been paid in full. 28 U.S.C. § 1915(b)(2). In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00. It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.     Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA. Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated. The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments. Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.     Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or

5

employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'" *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (citation omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at

6

556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

As discussed above, Plaintiff's claims primarily arise from Defendants' alleged failure to provide him with timely refills of the medication he uses to control his high blood pressure. Plaintiff states he began requesting refills on January 4, 2021, when he filled out a refill request form. Attach. 1 to Compl. 3, ECF No. 1-1. Prison officials did not fulfill this request, and Plaintiff began suffering from symptoms of high blood pressure by January 12, 2021, when he had to be assisted to the medical unit by other inmates. *Id.* at 4. When he arrived at medical, Plaintiff contends that Defendant Thorpe, the medical unit manager, instructed him to return to his cell and fill out a sick call. *Id.* When Plaintiff returned to his cell, he collapsed and injured his hand. *Id.* Plaintiff returned to medical, where Defendant Thorpe told him that his injury "did not look that serious" and again instructed Plaintiff to return to his cell, clean himself up, and fill out a sick call. *Id.* Plaintiff contends he did not get any medical treatment from Defendant Thorpe that day. *Id.* at 4-5.

On January 13, 2021, Plaintiff went to the pill call window and informed Defendant Callaway, a nurse, that he "had been out of blood pressure medication for over a week and needed some." Attach. 1 to Compl. 5, ECF No. 1-1. Defendant Callaway told Plaintiff that she didn't have time to find his pills and they would call him when his pills arrived. *Id.* Plaintiff then went to Defendant Collins, another nurse, and told her that Defendant Callaway had refused to provide Plaintiff with any blood pressure medication. *Id.* Defendant Collins told Plaintiff he was "aggravating" and a "big crybaby" and failed to provide him any treatment or other assistance. *Id.* On January 15, 2021, Plaintiff asked Defendant Callaway for pain medication (presumably for his hand) and blood pressure medication. *Id.* at 6. Defendant Callaway told Plaintiff he would be seen at sick call. *Id.* On January 20, 2021, Plaintiff was seen in medical, where another nurse told him his hand would be x-rayed and issued him Tylenol for pain, instructing Plaintiff to "put in another sick call once [his] finger nails fall off." *Id.*

Plaintiff continued to file complaints when he did not receive his medication on time and advised prison officials that it was difficult for him to "get [his] blood pressure back under control" when he has "to go several days without [his] meds." Attach. 1 to Compl. 7, ECF No. 1-1. Plaintiff alleges that on at least some occasions, it took a month to have his prescription refilled. *Id.* In addition, Plaintiff alleges that he requested assistance from Defendant Callaway and two other nurses—Defendants Smith and Collins—"on numerous occasions" when he either "went days without the medicine" or when he thought his blood pressure felt high, but these Defendants did not check his blood pressure or provide him with any other assistance. *Id.* at 14. Plaintiff states that he also complained to Defendant

Hargrove, the regional health service manager, about the delays in receiving his medication. *Id.* at 7. Although Defendant Hargrove stated she would address this issue, Plaintiff contends that his "blood pressure medication refills got even later" after his complaints. *Id.*

Defendant Smith later advised the inmates that the Georgia Department of Corrections had contracted with Correct Rx Pharmacy Service in September of 2021, and that the pharmacy would automatically refill inmates' prescriptions without requiring the inmates to request a refill. Attach. 1 to Compl. 16, ECF No. 1-1. Plaintiff contends that the pharmacy's "policy or procedure failed even before it started," as evidenced by the continued delays in refilling his medication, and he has thus named the President and CEO of the pharmacy, Dr. Ellen Yankellow, as a Defendant in this action. *Id.*

Plaintiff contends that Defendants' actions and inaction with respect to his medical care violated his constitutional rights. He seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and any "such other relief as it may appear that Plaintiff is entitled." Attach. 1 to Compl. 22-24, ECF No. 1-1.

### III. Plaintiff's Claims

#### A. Eighth Amendment Medical Treatment Claims

##### 1. Hypertension

The crux of Plaintiff's Complaint is that Defendants violated his constitutional rights by failing to provide him with adequate medical treatment for hypertension. A prisoner who demonstrates that a prison official was deliberately indifferent to his serious medical needs can state a claim under the Eighth Amendment. *Farrow v. West*, 320 F.3d

1235, 1243 (11th Cir. 2003). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Id.* at 1243. A plaintiff must first "set forth evidence of an objectively serious medical need," and must also "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* In other words, prison officials must both "know of and then disregard an excessive risk to the prisoner." *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).

Plaintiff has alleged that his hypertension is chronic and requires daily medication; that he has suffered serious consequences, including a stroke, as a result of this condition; that he currently experiences significant symptoms if he does not take his medication on a regular basis; and that he could suffer long-term effects, including organ damage, if he is unable to control his blood pressure. For purposes of preliminary screening, these allegations are sufficient to show that Plaintiff has serious medical needs. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (holding that a "serious medical need" may exist when "a delay in treating the need worsens the condition"). Plaintiff has further alleged that Defendants Thorpe, Collins, Smith, Callaway, and Hargrove all knew about Plaintiff's condition and the repeated delays in medication and failed to take adequate action to ensure he would receive his refills in a timely manner. Plaintiff's claims that these Defendants were deliberately indifferent to his hypertension shall therefore proceed for further factual development.

Plaintiff does not allege that Defendant Yankellow knew about Plaintiff's difficulties or personally participated in any denial of treatment. Rather, it appears Plaintiff

10

is seeking to hold her liable in her capacity as the CEO or President of Correct Rx Pharmacy. *See* Attach. 1 to Compl. 16, ECF No. 1-1. It is well-settled in the Eleventh Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, supervisors can only be held liable under § 1983 if they personally participated in unconstitutional conduct or if there is a causal connection between their actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). A causal connection can be established if

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (internal quotation marks omitted).

Plaintiff does not allege a history of widespread abuse or that Defendant Yankellow directed any of her subordinates to act unlawfully or knew they were doing so and failed to stop them. He does, however, suggest that Defendant Yankellow must have had a policy or custom that led to the deprivation of his constitutional rights. *See* Attach. 1 to Compl. 16, ECF No. 1-1. But "to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents[.]" *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir 2019); *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007)

11

(holding that plaintiff failed to meet standard for showing supervisory liability where plaintiff did not show that any other inmate had been adversely affected by policy alleged to have caused plaintiff's injuries). Plaintiff has not alleged that any other inmate had difficulty obtaining medication refills that could be attributed to Correct Pharmacy's policies or procedures. As such, Plaintiff has failed to allege a basis to hold Defendant Yankellow liable for the alleged constitutional violations in this case, and all claims against her should be dismissed without prejudice.

### 2. *Hand Injury*

Plaintiff also appears to allege that Defendant Thorpe refused to provide him with medical care on January 12, 2021, after he collapsed and injured his hand by slamming it in his cell door. Attach. 1 to Compl. 4-5, ECF No. 1-1.[1] Plaintiff states that when he reported to medical, his "hand, shirt and pants had so much blood all over them that even a lay person could have noticed the need for medical treatment." *Id.* Despite this allegedly obvious injury, Plaintiff states that Defendant Thorpe told him that his "hand did not look that serious" and simply sent him back to his dorm to clean up and submit a sick call. *Id.* at 4. When Plaintiff was called back out to medical on January 20, 2021, his injuries appeared significant enough that another nurse told Plaintiff he would need an x-ray, gave him medication for pain, and advised him that his fingernails would likely fall off. *Id.* at

---

[1] Plaintiff acknowledges that he received care for his hand injury starting on January 20, 2021, when he was called out to medical, and he also alleges that he "is receiving ongoing treatment on his right hand as a result of the injuries he sustained from the blackout." Attach. 1 to Compl. 7, 17, ECF No. 1-1. It thus appears that Defendant Thorpe is the only individual that Plaintiff is alleging failed to provide him with appropriate medical care for his hand injury.

12

6. These allegations, accepted as true, are sufficient to show that Plaintiff's hand injury was a serious medical need and that Defendant Thorpe was deliberately indifferent to it. *See, e.g., Harris v. Coweta Cnty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) ("A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference."). As such, these claims shall proceed for further factual development.

        B.    <u>Equal Protection Claims</u>

Plaintiff also mentions that Defendants' conduct violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In order to state an equal protection claim, a plaintiff must allege that similarly situated persons—or "comparators"—have been treated disparately through state action. *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). In this case, Plaintiff has not alleged that any similarly situated person was treated differently than he was, and he has therefore failed to state a claim upon which relief may be granted. *Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff). Thus, any equal protection claim Plaintiff seeks to assert should be dismissed without prejudice.

    **III.**    **Conclusion**

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (ECF No. 4) is **GRANTED**, and Plaintiff's Eighth Amendment medical treatment claims concerning his hypertension shall proceed against Defendants Thorpe, Collins, Smith, Calloway, and Hargrove. Plaintiff's Eighth Amendment medical treatment claims concerning his hand injury shall also proceed for factual development against Defendant Thorpe. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that certain of Plaintiff's claims against Defendants Thorpe, Collins, Smith, Calloway, and Hargrove require further factual development, it is accordingly **ORDERED** that service be made on these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service

expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that it is expected to diligently defend all allegations made against it and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party

and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian. **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a

trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 20th day of May, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge