## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **DARRYL PERNELL BUTLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:22-cv-00149-TES-CHW |
| | : | |
| Doctor **ELLEN H. YANKELLOW**, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court are Plaintiff Darryl Pernell Butler's Motion to Strike (Doc. 42), Defendant Juanita Yvette Williams Thorpe's Motion for Summary Judgment (Doc. 35), and Defendants Calisha Calloway, A. Collins, and E. Smith's Motion for Summary Judgment (Doc. 53). For the reasons explained below, Plaintiff's Motion to Strike (Doc. 42) is **DENIED,** and it is **RECOMMENDED** that Defendant Thorpe's Motion for Summary Judgment (Doc. 35) and Defendants Calloway, Collins, and Smith's Motion for Summary Judgment (Doc. 53) be **GRANTED**.

## BACKGROUND

On April 11, 2022, Plaintiff filed a complaint alleging Eighth Amendment violations related to lack of medical treatment and Fourteenth Amendment equal protection violations. (Doc. 1). After screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), the Court allowed Plaintiff's Eighth Amendment medical treatment claims concerning his hypertension to proceed against Defendants Thorpe, Collins,

Smith, Calloway, and Hargrove, and Plaintiff's Eighth Amendment medical treatment claim concerning his hand injury to proceed against Defendant Thorpe. (Doc. 5). The remainder of Plaintiff's claims were dismissed without prejudice. (*Id.*) Defendant Thorpe moved for summary judgment on October 28, 2022. (Doc. 35). On January 23, 2022, Plaintiff responded to Defendant Thorpe's Motion for Summary Judgment and moved to strike Pashion Chamber's affidavit, which was attached as an exhibit to Defendant Thorpe's motion (Doc. 35-2). (Doc. 42). Defendant Thorpe replied to Plaintiff's response on February 21, 2023. (Doc. 50). Defendants Calloway, Collins, and Smith moved for summary judgment on March 2, 2023. (Doc. 53). Plaintiff responded to their motion on April 12, 2023. (Doc. 55).

## RELEVANT FACTS[1]

Plaintiff was incarcerated at Central State Prison ("CSP") during the relevant time period. (Docs. 35-3 ¶ 1). At all relevant times, Defendant Thorpe was the medical unit manager at CSP. (Doc. 35 at 2). Defendant Smith was the Health Services Administrator

---

[1] Plaintiff objects to many of Defendants' statements of fact. Plaintiff argues that "[r]ather than providing only material facts, defendants offer instead factual assertions, including general background information from Plaintiff's deposition, false testimony, unsworn and/or unauthenticated documents and matters otherwise immaterial to this case." (Doc. 41-1 at 1-2). Contrary to Plaintiff's assertion, Defendants' submissions and statements of material fact are typical and appropriate to a motion for summary judgment. It is proper for Defendants to provide relevant background information from their personal knowledge, to refer to and draw information from Plaintiff's deposition, and to provide documents to support their position. Although Plaintiff may believe that these documents need some specific authentication, there is nothing to indicate that any of the evidence is improper or contains obviously false testimony. Plaintiff may mean that he believes Defendants' testimony to be false because he disputes their statements of fact. Although Plaintiff's objection to Defendants' evidence and factual statements is overbroad, this recommendation adheres to the standards of summary judgment and considers all facts in the light most favorable to Plaintiff, while drawing the factual background of this case from both parties' statements and evidence.

(Doc. 53-3 ¶ 6), Defendant Collins was the Director of Nursing (*Id.*), and Defendant Calloway was a nurse who was responsible for distributing medication.  (*Id.* ¶ 7).  All Defendants were employees of the State of Georgia during the relevant time period. (Doc. 53-3 ¶ 16).

Plaintiff claims he was diagnosed with chronic hypertension prior to the relevant events, which requires "high doses" of blood pressure medication daily.  (Doc. 55-2 at 4). When Plaintiff does not receive his blood pressure medication, he experiences dizziness, blurry eyes, nosebleeds, rapid heartbeat, and memory loss.  (*Id.* at 5).  Plaintiff claims that Defendants failed to provide his blood pressure medication in a timely way, which caused him to experience symptoms of high blood pressure and require medical attention on January 12, 2021.  (*Id.*)  Specifically, Plaintiff claims he was without his blood pressure medication for all of December 2020, all of March 2021, and all of July 2021. (Doc. 55-3 ¶¶ 3-11).  Plaintiff had an eleven-day delay in receiving his blood pressure medication in October of 2021, a nine-day delay in November 2021, a six-day delay in December 2021, and did not receive his medication at all in January 2022.  (*Id.* ¶¶ 12-18). Plaintiff filled out over a dozen medical complaints about these delays.  (Doc. 1-1 ¶ 24).

Plaintiff claims that he was taken to the CSP medical unit by gurney on January 12, 2021, because he was suffering from high blood pressure.  (Docs. 35-3 ¶ 3; 41-2 at 2). When Plaintiff got to the medical unit, Defendant Thorpe, the medical unit manager, instructed him to return to his cell and fill out a "sick call," or medical complaint, because

there was no medical provider in the unit.[2]   (Doc. 35-3 ¶ 4).   Defendant Thorpe is the medical unit manager, but she is not a medical care provider.   Rather, she maintains security in the medical unit.   (Doc. 35-3 ¶ 8).   Defendant Thorpe has no medical training.   (Doc. 35-3 ¶ 7).

As Plaintiff was leaving the medical unit, his finger was injured in a door.   (Doc. 35-3 ¶ 5).   The parties disagree about the details of how the injury happened.   Plaintiff presents several versions of the event in his pleadings, as he claims that he "got off the stretcher and blanked out … [and] mashed his hand," "got off the gurney and collapse[d] in the doorway [where] the cell door slammed on Plaintiff's hand," "[collapsed] in the door causing the door to slam on [his] hand," or that "Defendant Thorpe was in the position that she [was] in the door way causing the cell door to slam on [Plaintiff's] right hand" at various points in his submissions.   (Docs. 1-1 ¶ 15; 41-2 at 2; 41-2 at 6).   Defendants do not mention the gurney and merely state that Plaintiff injured his hand in the door.   (Docs. 41-1 ¶ 16; 41-2 at 2).   Because his finger was bleeding, Plaintiff wrapped his hand in his shirt to apply pressure to the injury.   (Docs. 35-3 ¶ 17; 41-2 at 2).   According to Plaintiff, this injury was so significant that his "hand, shirt, and pants had so

---

[2]   Plaintiff's minute disagreements with Defendants' wording or other frivolous objections are not enough to contradict Defendants' evidence or statements of fact.   For example, Plaintiff objects to Defendant Thorpe's Statements of Material Fact, which states: "Defendant Thorpe told [Plaintiff] that there was not a medical professional present to see him and that he should go back to his dorm and fill out a sick call."   (Doc. 35-3 ¶ 14).   Plaintiff "dispute[s this] as a false statement, [because] Plaintiff's complaint alleged that Defendant Thorpe told plaintiff to go back to the building because there was no officer in medical."   (Doc. 41-1 ¶ 14).   Plaintiff stated in his deposition, which he cites in making his objection, that "Ms. Thorpe told me … ain't nobody up here, go back to the dorm and fill out a sick call."   (Doc. 35-1 at 41).   Defendant Thorpe's statement of material fact substantially matches the statement in Plaintiff's deposition and the statement in Plaintiff's complaint.   This objection is immaterial, as are Plaintiff's other unsubstantiated quibbles with Defendants' submissions in its summary of relevant facts.

much blood all over them that even a lay person could have noticed the need for medical treatment." (Doc. 1-1 ¶ 15). After injuring his finger, Plaintiff returned to the medical unit and was told by Defendant Thorpe that his finger injury "did not look that serious." (Doc. 35-3 ¶ 6). Defendant Thorpe instructed Plaintiff again to return to his cell and fill out a sick call request. (*Id.*) Plaintiff returned to his dorm, applied a band-aid to his injured fingertip, and submitted a sick call request regarding his blood pressure and finger injury. (Doc. 35-3 ¶ 19).

Plaintiff claims that he did not receive medical treatment for his injury until eight days later, on January 20, 2021. (Doc. 41-2 at 6). Plaintiff's injured finger was later examined by medical professionals, who provided him with pain medication and determined that he required no additional treatment. (Doc. 35-3 ¶ 20). Plaintiff's fingernail eventually fell off and regrew because of the injury. (Doc. 35-3 ¶ 21). Currently, Plaintiff claims that his finger is "okay," except that it hurts occasionally when he writes for a long time. (Docs. 35-3 ¶ 22; 35-1 at 59:5-9). Plaintiff also contends that his "hand has been X-rayed and Plaintiff has received [ongoing] pain medication" and that "[t]he doctor noted that Plaintiff suffers from tendonitis in his right hand." (Doc. 41-1 ¶ 20). Plaintiff asserts that the tendonitis was caused by his hand injury on January 12, 2021. (Doc. 41-2 at 7).

Plaintiff alleges that during the relevant time period he attempted to get his blood pressure medication several times, but Defendants refused to give it to him. Plaintiff claims that on or about January 13, 2021, he went to the pill call window and asked Defendant Calloway for his blood pressure medication, to which she responded, "I've got

a long pill call out there," "I don't have time to find you no pills," and "you will get a call when yours come."  (Doc. 1-1 ¶ 17).  Plaintiff then went to Defendant Collins to complain that Defendant Calloway had refused to give him his medication.  (*Id.* ¶ 18). Plaintiff claims that Defendant Collins replied, "You are so aggravating, don't be a big crybaby, if you were on the street you would not be worried about those little bruises and blood pressure medication." (*Id.*)  Plaintiff claims that other nurses laughed at Defendant Collins' statements and that Defendant Calloway said, "Butler is a big crybaby." (*Id.*) On January 15, Plaintiff claims that he asked Defendant Calloway about his blood pressure medication again, and she replied, "You will be seen at sick call, now run and tell that." (*Id.* ¶ 19).  Plaintiff claims that the "constant delay in receiving the blood pressure [medication] … is causing wear and tear on Plaintiff's kidney[s] and heart." (Doc. 1-1 at 15).

Defendants contend that Plaintiff never filed a grievance related to his not receiving his blood pressure medication prior to January 2021 or a grievance related to his finger injury that named Defendant Thorpe.  (Doc. 53-3 ¶ 4).  Plaintiff disputes this. Plaintiff claims he filed a grievance against Defendant Thorpe on January 19, 2021, and provides a "handwritten copy" of this grievance.  (Docs. 41-1 ¶ 31; 55-1 at 2).  Plaintiff asserts that his complaint against Defendant Thorpe was "resolved to Plaintiff's satisfaction at the prison level." (Doc. 41-1 ¶ 32).  Plaintiff claims he filed a grievance on March 31, 2021, which states that he had filled out two other sick calls regarding his finger injury earlier that month but that he had not been seen by a medical professional yet.  (Doc. 35-3 ¶ 29).  This grievance does not mention Defendant Thorpe or the alleged

events that occurred on January 12, 2021.  (*Id.*)  Plaintiff also claims that he "delivered a paper grievance to the deputy warden of care and treatment (Michael Thomas) referenc[ing] the January 12, 2021, incident with Defendant Thorpe" on September 19, 2021.  (Doc. 41-2 at 2).  Plaintiff acknowledges that he signed a form stating that he had resolved his issue with Defendant Thorpe and that he has received on-going medical treatment for his hand injury.  (*Id.*)  Plaintiff also claims that he filed a grievance on April 2020, months prior to the January 12, 2021, incident, but he does not claim that he fulfilled the grievance process in relation to that filed grievance.  (Doc. 55-1 at 2).

Defendants Calloway, Collins, and Smith deny ever being aware of Plaintiff's medical issues related to his blood pressure medication, and they each deny ever treating or providing hands-on healthcare to Plaintiff.  (Doc. 53-3 ¶¶ 8-10).  Plaintiff disputes that Defendant Smith never provided treatment to him, as he alleges that she helped to treat his finger injury.  (Doc. 55-2 at 2).  Plaintiff also claims that Defendant Calloway signed off on Plaintiff's physician's order in November of 2018.  (Doc. 55-3 ¶ 24).

## STANDARDS

*The Exhaustion Requirement*

The PLRA mandates that prisoners exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law. Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate

unwarranted federal-court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

### *The Grievance Procedure*

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02.  (Doc. 35-2 at 8). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue.  (*Id*. at 13).  Prisoners may file outside of the 10-day window if they show good cause.  (*Id*.).  The original grievance is then screened by prison staff, and typically either rejected or accepted for processing.  (*Id*. at 14).  The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice.  (*Id*. at 16).  On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days.  (*Id*. at 19-20).  The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response.  (*Id*. at 20).  The grievance policy itself does not list any specific detail required for a grievance.  *See generally*  (*Id*.)

### *Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. School Bd. of Miami-Dade County,* 285 F.3d 962, 970 (11th Cir.2002) (internal quotations omitted).  Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

Plaintiff moves to strike Pashion Chambers's affidavit.  (Doc. 42).  Defendant Thorpe moves for summary judgment, as do Defendants Calloway, Collins, and Smith. (Docs. 35; 53).  For the following reasons, Plaintiff's Motion to Strike (Docs. 42) is **DENIED.**   It is **RECOMMENDED** that Defendant Thorpe's Motion for Summary Judgment and Defendants Calloway, Collins, and Smith's Motion for Summary Judgment be **GRANTED.**

When the Court issued its screening order on Plaintiff's complaint, it ordered service of process on the remaining defendants in the case. (Doc. 5). However, one defendant has yet to be served. The Clerk of Court issued service of process paperwork for personal service on Defendant Cassie Hargrove after her waiver went unexecuted. (Doc. 18; 20). Personal service also went unexecuted, as Hargrove is no longer employed by the Department of Corrections. (Doc. 29). Plaintiff has not provided further information to enable the Court to effect service and has made no effort to remedy the failure of service. Plaintiff's claims against Defendant Hargrove are subject to dismissal, without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Moreover, ordering service on Defendant Hargrove at this point would be futile because dismissal of Plaintiff's claims for failing to exhaust and for failing to meet the standards for Eighth Amendment claims would also be applicable to his claims against Defendant Hargrove. Accordingly, it is **RECOMMENDED** that the claims against Defendant Hargrove be dismissed along with the rest of Plaintiff's claims.

*Plaintiff's Motion to Strike*

Plaintiff moves to strike CSP Deputy Warden Pashion Chambers' declaration, which was attached to Defendant Thorpe's Motion for Summary Judgment. (Docs. 42; 35-2). Plaintiff objects to this declaration on several grounds, including: (1) that Chambers was not the CSP Deputy Warden of Care and Treatment until May 2022, while the grievance history she attests to ends in April 2022 (Doc. 42 at 4-5); (2) that the GDC grievance process that Chambers attests to was a different version than the one that Plaintiff was familiar with (Doc. 42 at 5); (3) that Chambers was not present when

Plaintiff was briefed on the grievance process in June 2017 (Doc. 42 at 5-7); (4) that contrary to her declaration, Chambers was present during a conversation on January 18, 2021, about a grievance that allegedly involved Defendant Thorpe (Doc. 42 at 7); and (5) that none of the exhibits attached to Defendant Thorpe's Motion for Summary Judgment have been authenticated (Doc. 42 at 8-12).   Because a motion to strike is not an appropriate vehicle to dispute summary judgment evidence and because Plaintiff's arguments are without merit, Plaintiff's motion (Doc. 42) is **DENIED**.

As Plaintiff acknowledges in his motion, motions to strike at the summary judgment stage are generally disfavored.  (Doc. 42 at 3).  The appropriate method of challenging evidence and disputing facts at summary judgment is by including any objections to the other party's evidence or statements of facts in the responses to the motion and statements of material fact.  *See* Fed. R. Civ. P. 56(c)(2), Advisory Committee Note (2010 Amendments).

Additionally, Plaintiff's objections to Chambers' declaration are without merit. Plaintiff seems to believe that there is a higher standard for personal knowledge and statements of fact than the Federal Rules of Civil Procedure require.  Many of his objections identify Chambers' declarations to be false because Plaintiff does not believe that she had enough personal knowledge to make such a declaration, but Plaintiff has not claimed that Chambers was not familiar with the grievance procedures at CSP or that Chambers' past role as a Chief Counselor before she took her current position failed to provide her with the personal knowledge required to make her declaration.  The record shows that Chambers is indeed "familiar with the information and records maintained by

the Department of Corrections under the Grievance SOP" and that the documents attached to her declaration were prepared "at or near the time of the information reflected therein by a person with knowledge of the information, [that] they are kept in the regular course of business, and it is the regular practice of the Department of Corrections to make and maintain such records."  (Doc. 35-2 ¶ 18).  This declaration, which Plaintiff has not challenged, is sufficient to satisfy the requirements of Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff objects to Chambers' references to the grievance procedures because he was informed about an earlier version of the grievance procedure in 2017 and not the version that was at use in 2019, but Plaintiff has not argued that Chambers was unfamiliar with the earlier version of the grievance procedure.  Plaintiff also has not argued that there was a substantial difference in the two versions of the grievance procedure.  Indeed, Plaintiff could not make that argument, as a review of the two versions shows that there is no material difference between the two for the purposes of this case.[3]

Finally, although Plaintiff argues that Chambers was present during a conversation about a grievance he filed against Defendant Thorpe regarding the January 12, 2021, incident, Plaintiff did not object to Paragraph 13 of Chamber's declaration, which states

---

[3] The Court may properly take judicial notice of the 2017 version of the grievance procedure, which has not been attached to these proceedings by either party.  *See Maldonado v. Ford*, 5:19-cv-421 (MTT) (CHW), Doc. 61 at 5 (M.D. Ga. Nov. 12, 2021) (citing two versions of the grievance procudre from 2017 and 2021); *see also Universal Express Inc. v. U.S. SEC*, 177 F.App'x. 52, 53 (11th Cir. 2006) (taking judicial notice of public documents); *Moore v. Birmingham Pub. Lib.*, 559 F.App'x. 847, 848 n.1 (11th Cir. 2014) (taking judicial notice of public documents). The grievance procedure is also available on the GDC's website, and therefore may be considered self-authenticating as a publication by a government agency under Federal Rule of Evidence 902(5).

that there was no record of "any grievance from inmate Butler which mentions Unit Manager Thorpe or the events of January 12, 2021." (Doc. 35-2). Although Plaintiff has attached a "handwritten copy" of a grievance form that purports to relate to January 12, 2021, Plaintiff has also acknowledged that there is no review or record of grievances that are resolved, and Plaintiff claims that his grievance was resolved informally. (Docs. 41-2 at 11; 41-1 ¶ 32). That Plaintiff disputes the portion of Chambers' affidavit that claims she was unaware of Plaintiff's grievances because she was at a meeting regarding a grievance is noted. But Plaintiff's disagreement does not prove that Chambers has made an obviously false statement or that there is any reason that her declaration and exhibits should not be considered in the normal course of summary judgment proceedings. In the normal course of summary judgment proceedings, the Court must consider all evidence in the light most favorable to the non-moving party and identify any disputed evidence that creates a genuine issue of material fact. Accordingly, Plaintiff's Motion to Strike (Doc. 42) is **DENIED**.

*Defendant Thorpe's Motion for Summary Judgment*

Defendant Thorpe moves for summary judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff's claims are barred because he cannot establish that Defendant Thorpe was deliberately indifferent to his serious medical need, (3) Defendant Thorpe is entitled to qualified immunity, (4) the Eleventh Amendment and § 1983 bar Plaintiff from asserting claims against Defendant Thorpe in her official capacity, and (5) Plaintiff is not entitled to injunctive relief against Defendant Thorpe because she is retired from CSP. (Doc. 35). Review of the record confirms that

Plaintiff failed to exhaust his administrative remedies, Defendant Thorpe is entitled to qualified immunity, the Eleventh Amendment and the text of § 1983 bar Plaintiff from asserting claims against Defendant Thorpe in her official capacity, and Plaintiff is not entitled to injunctive relief against Defendant Thorpe. As such, Defendant Thorpe is entitled to judgment as a matter of law.

### 1. *Plaintiff failed to exhaust his administrative remedies*

Defendant Thorpe argues that Plaintiff failed to exhaust his administrative remedies, and therefore, his claims should be dismissed. (Doc. 35 at 4).  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)).  The prisoner must properly exhaust the grievance procedure, meaning that the prisoner must take each step in the administrative process and abide by the timing and format requirements of the prison.  *See Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008).

Defendant argues that during time period relevant to this complaint, Plaintiff filed five grievances, but only one related to a medical matter.  (Doc. 35-2 ¶ 11).  This grievance, Grievance No. 728171, was filed on March 31, 2021, and complains that Plaintiff had filled out two sick call requests related to his finger that month but had not yet been seen by a medical professional.  (*Id.* ¶ 12).  The grievance does not mention Defendant Thorpe or the events of January 12, 2021.  (*Id.*)   Plaintiff's allegations differ

14

from the Defendant's, but he does not allege that he properly exhausted the grievance process.  In his response, Plaintiff claims that he filled out a paper grievance shortly after the January 12, 2021 incident, but that he signed a form to drop the grievance once he spoke to prison staff and Defendant Thorpe and had received medical treatment for his finger injury.  (Doc. 41-2 at 11).  Plaintiff also claims that on September 19, 2021, he "hand-delivered a paper grievance to the Deputy Warden of Care and Treatment (Michael Thomas) referenc[ing] the January 12, 2021, incident with Defendant Thorpe."  (Doc. 41-2 at 2).  Plaintiff was provided with a form that stated that his issue with Defendant Thorpe had been resolved, which he signed.  (*Id.*)

Plaintiff acknowledges that the prison grievance process makes clear that there is no review for a dropped grievance.  (Doc. 41-2 at 11).  Moreover, according to the grievance procedure, Plaintiff's alleged September grievance would have been untimely filed.  (*See* Doc. 35-2 at 13 (stating that there are 10 days in which a prisoner may file a grievance after the underlying incident occurs)).  Additionally, Plaintiff does not claim that he followed the appeal procedure for any relevant grievance.  Thus, Plaintiff does not claim to have properly exhausted the grievance procedure.  Plaintiff's admission that he signed a form acknowledging that his grievances were resolved further demonstrates that he did not exhaust the grievance procedure properly as required before filing his § 1983 lawsuit, as grievances that are resolved within the prison's grievance process do not exhaust the grievance process for the purposes of § 1983.  *See Jones v. Bock,* 549 U.S. 199, 218 (2007) ("to properly exhaust administrative remedies[,] prisoners must complete the administrative review process in accordance with the applicable procedural rules—

rules that are defined not by the PLRA, but by the prison grievance process itself"); *Maldonado v. Ford*, 5:19-CV-421 (MTT) (CHW), Doc. 61 at 6 (M.D. Ga. Nov. 12, 2021) *adopted by* Doc. 62 (dismissing claim because prisoner plaintiff dropped the relevant grievance before the grievance appeal was decided); *Wright v. Baldwin Cnty. Sheriff's Office*, 5:19-CV-456 (TES) (TQL), 2021 WL 282108 at *3 (M.D. Ga. Jan. 6, 2021) *adopted by* 2021 WL281135 (M.D. Ga. Jan. 27, 2021) (finding that plaintiff had not properly completed the grievance process prior to filing suit where plaintiff dropped the relevant grievances); *Smith v. Coleman*, 6:18-CV-119 (RSB) (BWC), 2020 WL6577500 at *2 (S.D. Ga. July 24, 2020) *adopted by* 2020 WL 5104957 (S.D. Ga. Aug. 31, 2020) (finding plaintiff failed to fully exhaust his administrative remedies where plaintiff dropped his grievance).

Accordingly, Plaintiff has not shown that he has properly exhausted his administrative remedies, and therefore, his claims against Defendant Thorpe should be dismissed.

*2. Defendant Thorpe is entitled to qualified immunity as to Plaintiff's deliberate indifference claims*

Even if Plaintiff's claims were not barred by his failure to exhaust, his claims of deliberate indifference to serious medical needs would be barred by Defendant Thorpe's qualified immunity.

"Qualified immunity protects government officials if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Nam Dang v. Sheriff, Seminole Cnty., Fla.*, 871 F.3d 1272, 1278

(11th Cir. 2017) (internal citation omitted).   "A government actor can be stripped of qualified immunity only when all reasonable government actors in the defendant's place would know that the challenged discretionary conduct violates federal law." *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (citations omitted).   "To be entitled to qualified immunity, a public official 'must first prove that [s]he was acting within the scope of h[er] discretionary authority when the allegedly wrongful acts occurred." *Nam Dang* 871 F.3d at 1279.   "An official acts within h[er] discretionary authority if h[er] actions (1) were undertaken 'pursuant to the performance of h[er] duties,' and (2) were 'within the scope of h[er] authority.'" *Id.* (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988).   Plaintiff's allegations all pertain to Defendant Thorpe's actions in the course of her duties as a prison official, in which she provided security to the medical unit and controlled prisoners' access to the medical unit.

Although Plaintiff argues that "it should be undisputed that Defendant Thorpe [was] not acting pursuant to the performance of her duties and within the scope of her authority when she denied Plaintiff emergency medical attention," the record does not support this finding.   (Doc. 41-2 at 14).   Rather, the record shows that it was Defendant Thorpe's duty to provide security to the medical unit and to control prisoner access to the unit.   Determining whether Plaintiff should be allowed entry fell within those duties. Therefore, the Court concludes that the Defendant Thorpe has shown she was acting within her discretionary authority at the relevant times and is eligible to assert qualified immunity.

17

After a defendant establishes that she was acting within her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Myrick v. Fulton Co.*, *Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023). A plaintiff fulfills this burden by showing that (1) the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) that the violated right was clearly established at the time of the alleged violation. *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). These two elements may be addressed in any order, and if the plaintiff fails to show one is fulfilled, the Court need not reach the other. *Id.*

The first step of qualified immunity analysis is the identification of the "precise constitutional violation" that the plaintiff alleges and the explanation of "what the violation requires." *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013). In this case, Plaintiff alleges that Defendant Thorpe was deliberately indifferent to his serious medical needs by denying him care for his finger injury at the medical unit on January 12, 2021. (Doc. 1).

To establish deliberate indifference to a serious medical need, Plaintiff must satisfy three elements: (1) Plaintiff must satisfy the objective component of the deliberate indifference analysis by showing that he had a serious medical need, (2) Plaintiff must satisfy the subjective component of the analysis by showing that the Defendants acted with deliberate indifference to his serious medical need, and (3) Plaintiff must show that his injury was caused by the Defendants' wrongful conduct. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

18

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Dang ex rel. Dang v. Sheriff*, 871 F.3d 1272, 1280 (11th Cir. 2017) (internal quotation marks omitted). Further, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (internal quotation marks omitted). Viewed in the light most favorable to Plaintiff, the evidence indicates that Plaintiff's high blood pressure symptoms presented an objectively serious medical need, as they related to a diagnosed condition for which Plaintiff was prescribed medication. As to the finger injury, however, although Plaintiff argues that the injury presented an objectively serious medical need because his hand bled so much that it would be obvious to a lay person that he needed medical attention, the record shows that his finger stopped bleeding after Plaintiff wrapped it in his shirt and that Plaintiff treated the wound by covering it with a band-aid. (Doc. 35-1 at 55:18-56:6). These facts do not support a finding that Plaintiff's finger injury was a serious medical need. But even if Plaintiff's finger injury did present an objectively serious medical need, the undisputed facts show that Defendant Thorpe did not act with deliberate indifference to either Plaintiff's high blood pressure symptoms or his finger injury.

To fulfill the subjective requirement and show that a defendant acted with deliberate indifference, "[a] prisoner must … show a prison official's subjective intent to punish by demonstrating that the official acted with deliberate indifference." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). This requires a showing that the Defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that

risk; (3) by conduct that is more than mere negligence." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Plaintiff has not shown that Defendant Thorpe had subjective knowledge that Plaintiff required immediate medical treatment.  The record shows that Defendant Thorpe said that Plaintiff's injury did not look serious and that she instructed him to proceed through the normal course of reporting an injury so that he could receive treatment by telling him to fill out a sick call request.  (Doc. 41-2 at 2).  Plaintiff has not rebutted Defendant Thorpe's contention that she did not provide medical care to inmates because she had no medical training and her statement that there was no one available to provide him care at that time.  Plaintiff's argument instead hinges on the fact that he allegedly did not receive treatment for his hand injury until January 20, 2021, as a result of Defendant Thorpe's turning him away on the date of the injury.

Although Plaintiff cites *Harris v. Coweta County* to argue that eight days of delay before receiving medical treatment constitutes deliberate indifference, that is not an accurate representation of that case, nor is the case an appropriate comparison to the case at hand.  21 F.3d 388, 393-94 (11th Cir. 1994).  In *Harris*, the prisoner plaintiff had such a severe nerve injury in his hand that three of his fingers were inoperable, and there was a question as to whether his hand could be salvaged.  (*Id.*)  The jail doctor recommended surgery and stated that "further delay [of surgery] must be avoided at all cost."  (*Id.*)  Because the facts in that case showed that the Sheriff was informed of this immediate need for surgery by a doctor and still delayed treatment, the Eleventh Circuit affirmed the district court and denied the Sheriff qualified immunity.  The delay at issue in that case

was of more than a month, which was held to be objectively unreasonable given what the Sheriff knew about the injury and its treatment recommendations.  This is not analogous to the case at hand, where there is no evidence on the record that Defendant Thorpe had notice of such an immediate need for treatment, no evidence that Thorpe had control over the eight-day delay that Plaintiff alleges beyond her initial denial of entrance to the medical unit on January 12, 2021, no evidence that Plaintiff's injuries were as severe as the plaintiff's injuries in *Harris*, and where there was a delay in treatment of only eight days.  Further, Plaintiff admits he received regular care for his finger injury at CSP after this initial delay.  (Docs. 1-1 at 17; 41-2 at 2).

Plaintiff's high blood pressure claim is harder to parse because of a lack of clarity in Plaintiff's pleadings.  Curiously, although Plaintiff claims he was in a "hypertension crisis" on January 12, 2021, when Defendant Thorpe turned him away from the medical unit, Plaintiff makes no clear claims about any injuries he suffered as a result of this crisis or any clear claims that he suffered harm because of the delay in treatment for his blood pressure issues at all, except for broad allegations that this high blood pressure has negative effects on his kidneys and heart.  (Doc. 1-1 at 15).  Plaintiff also makes no allegations that Defendant Thorpe was involved with his eventual medical care or that she made any attempt to interfere with it.  Plaintiff merely claims that Defendant Thorpe had the authority to have medical staff check his blood pressure and hand injury.  (Doc. 41-2 at 7).  Plaintiff does not explain how Defendant Thorpe was supposed to have medical staff do anything if they were not at the medical unit that day.  Plaintiff has not

made the requisite showing for subjective deliberate indifference on the part of Defendant Thorpe.

Even if the medical treatment Plaintiff received for his high blood pressure and finger injury were inadequate and Defendant Thorpe were somehow responsible for that inadequacy, it would not necessarily meet the standard for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Rather, a finding of deliberate indifference requires medical treatment that "is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Many of Plaintiff's complaints seem to indicate that he continued to experience pain after receiving care, but a prison official's failure to treat an inmate's pain must be "so cursory as to amount to no care at all" to "rise to the level of deliberate indifference."  *Williams v. Barrow*, 559 F. App'x 979, 984-85 (11th Cir. 2014).  Plaintiff claims he received ongoing pain medication to manage his pain. (Doc. 41-1 ¶ 20).  Plaintiff's complaints may also result from his dissatisfaction with the care he received or a desire for different care, but "a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] course of treatment [cannot] support a claim of cruel and unusual punishment."  *Harris*, 941 F.2d at 1505.

Regardless of the source of Plaintiff's dissatisfaction with his treatment, none of Plaintiff's pleadings show that Defendant Thorpe acted with deliberate indifference in light of the record, which reflects that Defendant Thorpe had nothing to do with Plaintiff's treatment and that Plaintiff received medical treatment after Defendant Thorpe sent him away from the medical unit on January 12, 2021.  At most, Plaintiff might

plausibly be able to allege that Defendant Thorpe was negligent in turning Plaintiff away, but mere negligence is insufficient to support a finding of deliberate indifference. *Melton*, 841 F.3d at 1223.

Finally, Plaintiff cannot show that Defendant Thorpe's conduct caused his injuries. To satisfy the causation element of deliberate indifference, a plaintiff must show that the defendant's "deliberate conduct" was the "moving force" behind his injury. *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Peltzer*, 536 U.S. 730, 739 n.9 (2002)). Plaintiff has failed to show deliberate conduct that meets the requirements for deliberate indifference, and nothing in the record supports the contention that the Defendant Thorpe caused Plaintiff any injury.[4] Beyond Defendant Thorpe's lack of involvement with Plaintiff's medical care, Plaintiff has provided no proof of any measurable injury resulting from either the initial denial of treatment for high blood pressure or his finger injury. Although Plaintiff claims that his hand occasionally hurts when he writes for too long, there is nothing in the record to connect this to a slight delay in treatment because no one was available to treat Plaintiff on January 12, 2021. Similarly, although Plaintiff claims he now suffers from tendonitis, nothing in the record connects this condition to the delay in treatment, aside from Plaintiff's conclusory statements. Plaintiff also argues that at some point "between

---

[4] Plaintiff does claim at one point in his pleadings that Defendant Thorpe was the one who closed the door on his hand, but his various statements about the cause of the injury are inconsistent. Plaintiff has also claimed that he "blanked out" during the incident and was not clear on how he sustained the injury. (*See* Doc. 41-2 at 2, 6) (each a different version of the incident). In his initial complaint, Plaintiff claimed that "[he] clasped the door causing the door to slam on [his] hand." (Doc. 1-1 ¶ 15).

January of 2021 and March of 2021, his hand became infected," but there is nothing to connect that broadly-stated injury to Defendant Thorpe's actions, either.  (Doc. 41-2 at 6).  "An inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" in his claim.  *McDaniels v. Lee*, 405 F.App'x. 456, 458-59 (11th Cir. 2010).  Plaintiff has not even attempted such a showing, aside from conclusory statements regarding his tendonitis.

Because there is inadequate evidence in the record to establish that Plaintiff's finger injury constituted a serious medical need, there is no genuine issue of material fact as to whether Defendant Thorpe acted with deliberate indifference to Plaintiff's serious medical needs or whether any action by Defendant Thorpe caused Plaintiff's alleged injuries, Plaintiff has failed to show evidence of a violation of his rights that would strip away Defendant Thorpe's qualified immunity.  Accordingly, qualified immunity should bar Plaintiff's claim of deliberate indifference to a serious medical need by denying medical treatment.

3.  *The Eleventh Amendment and § 1983 bar Plaintiff from asserting claims against Defendant Thorpe in her official capacity*

Plaintiff attempts to raise his claims against Defendant Thorpe in her official capacity as well as in his individual capacity.  The Eleventh Amendment makes clear that such claims cannot be brought against state officials in their official capacities because any relief sought from such a claim would in fact operate against the state.  *See Jackson v. Ga. Dept. of Trans.*, 16 F.3d 1573, 1577 (11th Cir. 1994).  Additionally, claims against

24

Defendant Thorpe in her official capacity are barred by the text of § 1983, which requires claims to be brought against a person acting under color of state law.  42 U.S.C. § 1983. It has long been held that an official acting as a state officer is not a "person" within the meaning of § 1983, as the officer acts as the State, and the State is not a person.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989).

Accordingly, Plaintiff's claims against Defendant Thorpe in her official capacity should be dismissed.  Although the other Defendants fail to raise this issue in their brief, it appears from Plaintiff's complaint that he attempted to raise similar claims against the other Defendants.  Such claims are barred as a matter of law for the same reasons explained above and should likewise be dismissed.

4. *Plaintiff is not entitled to injunctive relief because Defendant Thorpe has retired from CSP*

Plaintiff is not entitled to injunctive relief against Defendant Thorpe.  Because Defendant Thorpe has retired and no longer works at CSP, there is no potential for her to violate Plaintiff's rights in the future, and injunctive relief against her would be futile. Additionally, Plaintiff has been transferred to another prison.  Although Plaintiff argues that the doctrine of *Ex Parte Young* applies, he argues so on the basis that he is still suffering from the effects of the alleged violations and that he is concerned about future violations from different prison staff.  209 U.S. 1908.  *Ex Parte Young* allows a limited exception to sovereign immunity in certain suits against individual state officers to end continuing violations of federal law.  *See McClendon v. Ga. Dept. of Community Health*, 261 F.3d 1252, 1256 (11th. Cir. 2001).   Beyond the fact that Plaintiff has failed to prove

an initial violation of federal law, Plaintiff's arguments do not warrant continuing claims against Defendant Thorpe, who is no longer in a position to violate Plaintiff's rights. Accordingly, Plaintiff's claim for injunctive relief against Defendant Thorpe should be dismissed.

Although the other Defendants fail to raise this issue in their brief, it appears from Plaintiff's complaint that he attempts to raise claims for injunctive relief against the other Defendants as well. Such claims are barred by Plaintiff's transfer to a different prison for the same reasons explained above and should likewise be dismissed.

*Defendants Calloway, Collins, and Smith's Motion for Summary Judgment*

Defendants Calloway, Colins, and Smith move for summary judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff has not shown that Defendants were deliberately indifferent to his serious medical need, and (3) Defendants are entitled to qualified immunity. Plaintiff did not properly exhaust his administrative remedies, and, accordingly, his claims are barred. Defendants are also entitled to qualified immunity, and Plaintiff has not shown that Defendants were deliberately indifferent to his serious medical need.

Defendants argue that Plaintiff has not properly exhausted any grievance related to the denial of his blood pressure medication. (Doc. 53-2 at 5). As explained above, although Plaintiff contends that he has filed relevant grievances about his blood pressure medication, he does not show that he properly exhausted any grievance related to his claims. Accordingly, Plaintiff's claims are subject to dismissal for failure to exhaust his administrative remedies before filing suit.

On the merits, Plaintiff's claims against Defendants are subject to judgment as a matter of law because Defendants have qualified immunity from Plaintiff's claims.  As explained above, to have qualified immunity Defendants must show that they were acting within the scope of their discretionary authority at the relevant times.  *Nam Dang,* 871 F.3d at 1279.  Plaintiff has not shown that Defendants were not acting within their discretionary authority at the relevant times.  Instead, Plaintiff contends that "Defendants cannot show that they w[ere] acting within their discretionary authority" because "to support [their] motion for summary judgment they have attached a shameful affidavit from Defendant Smith . . . which [Plaintiff's exhibits] clearly show [is false] and should be stricken from the record. . . Plaintiff need not waste any more of the Court's time on qualified immunity."  (Doc. 55-2 at 16).  Contrary to Plaintiff's assertions, the there is nothing improper about Defendants' submissions.  Defendants' alleged actions at the relevant times were related to their official duties and were well within the scope of their discretionary authority.

Because Defendants were acting within their discretionary authority and are eligible to assert qualified immunity, Plaintiff must show that (1) the facts, viewed in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) that the violated right was clearly established at the time of the alleged violation.  Plaintiff has alleged that Defendants violated his constitutional rights by being deliberately indifferent to his serious medical need related to his high blood pressure.  Because Plaintiff has not presented sufficient evidence to show that

Defendants were deliberately indifferent, Defendants are entitled to qualified immunity as to Plaintiff's claims.

As explained above, to establish deliberate indifference to a serious medical need, Plaintiff must satisfy three elements: (1) Plaintiff must show that he had a serious medical need, (2) Plaintiff must show that the Defendants acted with deliberate indifference to his serious medical need, and (3) Plaintiff must show that his alleged injury was caused by the Defendants' wrongful conduct. *Goebert*, 510 F.3d at 1326. Although the evidence is sufficient to support a finding that Plaintiff's hypertension and blood pressure concerns were a serious medical need, Plaintiff cannot show that Defendants acted with deliberate indifference or that his alleged injury was caused by the Defendants' conduct.

To show that Defendants were deliberately indifferent to his serious medical needs, Plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Melton*, 841 F.3d at 1223. Here, there is no sufficient evidence to show that Defendants had subjective knowledge of a risk of serious harm. Although Plaintiff alleges that Defendants should have known about his high blood pressure, his only claims that they had knowledge of his conditions or treated them are inadequate to show a subjective basis of knowledge. Plaintiff claims that Defendant Smith treated his hand injury after January 12, 2021, but this fact does not indicate that Defendant Smith had subjective knowledge of Plaintiff's blood pressure issues. (Doc. 55-2 at 2). Similarly, Plaintiff argues Defendant Calloway signed off on his physician's orders in November of 2018, but that is likewise ineffective at proving subjective knowledge. (Doc. 55-3 ¶ 24). Further,

Plaintiff has not shown that Defendants themselves disregarded that risk or were directly responsible for the delays in receiving his blood pressure medication.  Finally, even if Plaintiff had made the requisite showings of subjective knowledge and disregard of a risk of serious harm, on this record Plaintiff would at best have alleged that these Defendants were negligent, which is insufficient to support a claim of deliberate indifference. *Melton*, 841 F.3d at 1223.

Finally, Plaintiff cannot show that Defendants' alleged actions caused any injury. Plaintiff is not even clear about what injury resulted from the delays in his blood pressure medication, besides conclusory claims that the delay resulted in symptoms of high blood pressure and was generally bad for his organs.  Plaintiff provides no evidence for these injuries.  "An inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *McDaniels,* 405 F.App'x. at 458-59.  Accordingly, Plaintiff has failed to show that Defendants were deliberately indifferent to his serious medical needs. Because Plaintiff has failed to show that Defendants committed a constitutional violation against him, Defendants are entitled to qualified immunity, and Plaintiff's claims are subject to dismissal.

## CONCLUSION

Because Plaintiff has failed to exhaust his administrative remedies, Defendants are entitled to qualified immunity as to Plaintiff's claims, and Plaintiff has failed to show that Defendants were deliberately indifferent to his serious medical needs, it is **RECOMMENDED** that Defendant Thorpe's Motion for Summary Judgment (Doc. 35)

and Defendants Calloway, Collins, and Smith's Motion for Summary Judgment (Doc. 53) be **GRANTED.**  Plaintiff's Motion to Strike (Doc. 42) is **DENIED.**

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Any objection is limited in length to **TWENTY (20) PAGES.**  *See* M.D. Ga. L.R. 7.4.

Pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED and RECOMMENDED**, this 27th day of July, 2023.


s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge