# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

DARRYL PERNELL BUTLER,

     *Plaintiff,*

v.

Doctor ELLEN H. YANKELLOW, *et al.,*

     *Defendants.*

CIVIL ACTION NO.
5:22-cv-00149-TES-CHW

## ORDER ADOPTING THE UNITED STATES
## MAGISTRATE JUDGE'S RECOMMENDATION

Before the Court is the United States Magistrate Judge's Recommendation [Doc. 56] to grant Defendant Juanita Yvette Williams Thorpe's Motion for Summary Judgment [Doc. 35] and Defendants Calisha Calloway, Aundria Collins, and Eugenia Smith's Motion for Summary Judgment [Doc. 53]. After properly seeking and receiving an extension of time to do so, Plaintiff Darryl Pernell Butler filed an Objection[1] [Doc. 59] to the magistrate judge's Recommendation, telling the Court that "this case should not

---

[1] In his Objection, Butler only "ask[s] that the . . . Recommendation not be follow[ed] [with] reference [to] Defendants Smith, Collins, and Calloway." [Doc. 59, p. 7]. Butler makes no argument that the Court should reject any portion of the magistrate judge's Recommendation as it pertains to Defendant Thorpe or Defendant Cassie Hargrove. Thus, absent any arguments in Butler's Objection as to Defendants Thrope or Hargrove, the Court, upon reviewing those portions of the Recommendation for clear error, **ADOPTS** the magistrate judge's findings and conclusions and **MAKES THEM THE ORDER OF THE COURT**. 28 U.S.C. § 636(b)(1)(A); [Doc. 56, pp. 10, 13–25]. Accordingly, the Court **GRANTS** Defendant Juanita Yvette Williams Thorpe's Motion for Summary Judgment [Doc. 35], and it **DISMISSES** Butler's claims against Defendant Cassie Hargrove. [Doc. 56, p. 10].

be dismissed." [Doc. 59, p. 1]; [Doc. 57]; [Doc. 58].

While it's clear that Butler just simply disagrees with the magistrate judge's Recommendation which, if adopted, will summarily end this lawsuit, the Court must—in light of Butler's Objection—"make a de novo determination of those portions" of the Recommendation to which he objected. 28 U.S.C. § 636(b)(1)(C). In his Objection, Butler relies on 28 U.S.C. § 636(b)(1)(C), the more common route for objecting to a magistrate judge's recommendations, as well as Federal Rule of Civil Procedure 72, to explain why the Court "should decline to follow" the pending Recommendation. [Doc. 59, pp. 1, 3, 6–7]. Invoking "a de novo determination" under § 636, Butler offers arguments focused on exhaustion of administrative remedies under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), and arguments that directly address the merits of his claims. [*Id.* at pp. 1–6]; 28 U.S.C. § 636(b)(1)(C). Then, pursuant to Rule 72, Butler objects to two non-dispositive rulings issued by the magistrate judge. [Doc. 56, pp. 6–7]. It makes sense to tackle the easier stuff first. So, the Court will dispense with Butler's arguments couched under Rule 72 and then switch gears to his arguments regarding exhaustion and the actual merits of his claims based on alleged violations of the Eighth and Fourteenth Amendments. [*Id.* pp. 6–7]; [Doc. 1-1, p. 22]; [Doc. 56, p. 1].

### 1.      <u>Federal Rule of Civil Procedure 72</u>

Through Rule 72, Bulter quibbles with the magistrate judge's non-dispositive rulings that gave Defendants Calloway, Collins, and Smith (collectively, the "Medical

Defendants") two extensions of the deadline by which they had to move for summary judgment. [Doc. 43]; [Doc. 44]; [Doc. 48]; [Doc. 49]. In both requests, the Medical Defendants provided explanations for why they needed additional time. In their First Motion for Extension of Time [Doc. 43], they stated that "[r]ecent turnover . . . created difficulties" for them to meet the deadline to file a dispositive motion. [Doc. 43, p. 1]. In their Second Motion for Extension of Time [Doc. 48], they noted further delays. This time, however, a cyber security attack on the law firm representing the Medical Defendants "prevent[ed] attorneys from accessing . . . case files." [Doc. 48, pp. 1–2]. The magistrate judge granted both motions, eventually extending the Medical Defendants' dispositive motion deadline to March 2, 2023. [Doc. 49].

Although he hadn't yet been served with a copy of the Medical Defendants' First Motion for Extension of Time, Butler wrote a letter to the Clerk of Court on February 2, 2023. [Doc. 47, p. 1]. In that letter, Butler noted that he "was informed" that the Medical Defendants sought an extension of time to file their summary-judgment motion, and he expressed his intent to object to an extension. [*Id.*]. Then, in wrapping up his letter, Bulter instructed the Court "not to rule on it until [he had] the opportunity" to argue against an extension. [*Id.*].

In his Objection, Butler says that he "filed objection[s] to both extensions" and that they "went unanswered." [Doc. 59, p. 6]. In the course of its de novo review and consistent with Butler's request, the Court reviewed his arguments opposing the

Medical Defendants' request for an extension of time as well as the magistrate judge's non-dispositive rulings. *See generally* [Doc 52]; *see also* [Doc. 59, p. 7].

Rule 72 permits "[t]he district judge . . . [to] consider timely objections and modify or set aside any part of [a magistrate judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Clear error is a highly deferential standard of review." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citations omitted); *see also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.").

Considering this highly deferential standard, the Court cannot say that the magistrate judge "abused[d] his discretion" when he ruled on two motions for extension of time without giving Butler an "opportunity to respond." [Doc. 59, p. 6]; *see also* LR 7.7, MDGa (noting that motions for extension of time may be excepted from standard briefing schedule). Had the Medical Defendants not sought an extension of time and just filed their summary-judgment motion past the dispositive motion deadline, district courts still "enjoy broad discretion" as to whether they will "consider

4

untimely motions for summary judgment." *Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344 (11th Cir. 2007) (per curiam) (first quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); and then citing *Matia v. Carpet Transp., Inc.*, 888 F.2d 118, 119 (11th Cir. 1989)). With such considerable discretion, the Court isn't "left with the definite and firm conviction" that a simple—and often routine—extension of time to move for summary judgment was clearly erroneous or contrary to law.[2] Fed. R. Civ. P. 72(a); *Holton*, 425 F.3d at 1350. Thus, the Court **OVERRULES** Butler's Rule 72-based Objection.

### 2.   28 U.S.C. § 636(b)(1)(C)

Now, as for his arguments raised under § 636(b)(1)(C), Butler "objects to the conclusion that he fail[ed] to exhaust his administrative remedies" as they relate to his claims against the Medical Defendants for him not receiving—or not timely receiving— "his blood pressure medication prior to January 2021."[3] [Doc. 59, p. 4]. And, on a more substantive level, when it comes to his complaints of delays in receiving his medication,

---

[2] The same can be said of the Court granting Butler an extension of time to file his Objection past the regular 14-day period proscribed by 28 U.S.C. § 636(b)(1)(C). [Doc. 57]; [Doc. 58]. Like the magistrate judge, the Court ruled on Butler's request for additional time without giving the Medical Defendants or Defendant Thrope an opportunity to oppose it. [Doc. 58]. Certainly, "[d]eadlines are not meant to be aspirational" and should be adhered to, but courts enjoy broad discretion in exercising their managerial power in controlling their dockets. *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). Far from it—nothing novel or contrary to law has been done by extending any deadline in this case.

[3] For purely stylistic reasons, the Court sometimes exchanges "blood pressure medication" with the more generic descriptor of "medication." Whenever the more generic term is used, the Court is, of course, only referring to Butler's blood pressure medication as any of his other medications are not at issue in light of the Court granting summary judgment to Defendant Thorpe. *See, e.g.*, [Doc. 35-1, Butler Depo., pp. 26:6–8 (discussing medication for frost bite); 59:10–14 (discussing pain medication for hand injury)].

Butler objects to the magistrate judge's conclusion that the Medical Defendants were not deliberately indifferent to his "hypertension and blood pressure concerns." [*Id.* at p. 5]; [Doc. 1-1, p. 10 ("When I don't get my blood pressure medicine on time, it's hard to get it back under control.")]; [Doc. 56, p. 28].

Before delving into the specifics of Butler's argument, the Court pauses to note a few things. For starters, everyone involved in this case—Butler, the defendants, the magistrate judge, and the district judge—understands that pro se pleadings are "held to a less stringent standard than pleadings drafted by attorneys" and must be liberally construed. *Tannenbaum v. United States*, 138 F.3d 1262, 1263 (11th Cir. 1998) (citation omitted). Parallel with that understanding, however, is the reminder that liberal construction is not limitless. The Eleventh Circuit is clear that courts cannot serve as de facto counsel for a pro se plaintiff and rewrite a pleading so that it sustains a cause of action. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). Neither courts nor defendants are mind-readers, which is why it is always a plaintiff's burden to adhere to Federal Rule of Civil Procedure 8's pleading standard by providing a "short and plain statement of the claim" when framing his complaint as he sees fit. Fed. R. Civ. P. 8(a)(2). How a plaintiff frames his complaint is his choice, and it's the very first look at how a plaintiff gives the reasonable inference that a defendant could be liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint also sets the stage for any defenses a defendant may ultimately assert. These well-established

6

tenets are very much in play here because Butler clearly alleged that the incident giving rise to this lawsuit took place from "January 12, 2021[,] until" April 1, 2022—the date he filed his Complaint [Doc. 1]. [Doc. 1, pp. 5–6].

  a.  **Failure to Exhaust**

Even in opposing the Medical Defendants' summary-judgment motion, Butler states that "[w]hile housed at Central State Prison *between* January of 2021 and April of 2022," the Medical Defendants "fail[ed] to issue [Butler] his blood pressure medication in a timely manner[] which resulted in [him] passing out [and injuring] his right hand." [Doc. 55-2, p. 1] (emphasis added); [Doc. 1, p. 5]. The Medical Defendants argued that Butler failed to file any grievance "pertaining to any non-receipt of his blood pressure medication" within the timeframe he established for this case. [Doc. 53-2, pp. 3–8]. The magistrate judge agreed and recommended that Butler's claims against the Medical Defendants "are subject to dismissal for failure to exhaust . . . administrative remedies before filing suit." [Doc. 56, p. 26].

In his Objection though, Butler contends that the magistrate judge erred when he agreed with the Medical Defendants' exhaustion arguments in "reference [to Butler] not receiving his blood pressure medication *prior to January of 2021*." [Doc. 59, p. 4] (emphasis added). But—that's a completely different time period from what Butler put in his Complaint. Without question, Butler filed this lawsuit because he injured his hand on January 12, 2021—not for medication delays "*prior to January of 2021*." [Doc. 1-

1, p. 4]. Butler's tactical maneuvers, while clever, are not permitted by the law.

Hoping to use arguments in his Response [Doc. 55-2] to the Medical Defendants' summary-judgment motion and make an eleventh-hour expansion of the timeframe for this lawsuit, Butler provided a handwritten recitation of a grievance that he "filed on the kiosk system [that] reference[d] his blood pressure." [Doc. 55-2, p. 11]. Butler states:

> On April 30, 2020, [I] filed the following grievance reference [sic] [me] not receiving [my] blood pressure medication.
>
> "I put in a medication refill request, which was 10 days before I ran out. I ran out on April 19, 2020. After not receiving the medication on April 22, 2020[,] I put in another refill. On April 25, 2020, I started to experience headaches and diziness [sic]. Medical was notified. The building officer informed me that medical staff alleged that my blood pressure medicine had been ordered. On April 29, 2020, I was carried to medical after passing out. [A nurse] checked my blood pressure, it was 170 over 117, nurse informed me that she called about my medicine on April 28, 2020[.] I was instructed by [the nurse] to go to the Pill Call window and get my medicine until my meds. came[.] On April 30, 2020[,] I was given my noon meds at the window. I went to [get] evening meds and was told there was no chart on me.
>
> Grievance filed April 30, 2020.
>
> Escalated to Appeal
>
> [B]ased on the institutions [sic] failure to respond[,] I am appealing the above.

[Doc. 55-3, Butler Aff., p. 8, ¶ 33]; *see also* [Doc. 55-2, p. 11]; [Doc. 59, p. 2].

Assuming—based on the discussion below—that Butler exhausted the grievance filed on April 30, 2020, as contemplated by the two-step analysis from *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), he cannot amend his Complaint at the

summary-judgment stage to now include allegations "prior to January of 2021." [Doc. 59, p. 4]. "A plaintiff may not amend [a] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Plain and simple.

If Butler wanted to change the operative timeframe of this lawsuit to include dates prior to the ones delineated by his Complaint, then he should've properly sought leave to amend so that the Medical Defendants would have had fair notice of what all he wanted this lawsuit to cover. *See Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If a defendant doesn't have a relevant timeframe target to shoot at, then she doesn't have "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* Without fair notice, a defendant has no real path to craft her defenses or efficiently conduct discovery. And more importantly, such a last-minute expansion, after the close of discovery and in the midst of summary-judgment arguments, which attempts to significantly broaden the scope of a lawsuit to save a cause of action, completely transcends the notions of fair play.

To be sure, the Court notes Butler's allegation that "[s]ince January of 2020, [he] filed over a dozen complaints about [his] blood pressure medication not being issued on time." [Doc. 1-1, p. 7]. However, while there may have been "a dozen" complaints *since* "January of 2020," only *one* of them (a "complaint" dated March 17, 2020, noting

that Butler was "out of blood pressure mediation for 17 days") predates January 2021.

[*Id.* at pp. 7–8]. The rest of the "complaints" that Butler provided are dated January 12,

2021; January 13, 2021; February 14, 2021; February 16, 2021; June 8, 2021; August 13,

2021; October 10, 2021; November 18, 2021; December 27, 2021; and March 14, 2022. [*Id.*

at pp. 8–13]. In the "complaint" made on March 17, 2020, Butler alleges that he received

a response the very next day stating that his "medical request will be addressed by a

member of the prison medical staff." [*Id.* at p. 8]. Nevertheless, these "complaints" or

"reminders" about his blood pressure mediation to prison staff or prison medical staff

aren't formal grievances for purposes of PLRA exhaustion. *See, e.g.,* [*id.* at 11–12]. True,

"the [Georgia Department of Corrections] encourages the use of informal complaints

like those lodged" by Butler on the above-listed dates, but "a formal grievance must be

submitted to initiate the administrative process." *Varner v. Shepard*, 11 F.4th 1252, 1261

(11th Cir. 2021), *cert. denied*, 142 S. Ct. 1172 (2022). Thus, to the extent he relies on them

as such, Butler's informal "complaints" or "reminders" simply don't cut it for purposes

of satisfying the "proper exhaustion" requirement. *Id.*

　　　With regard to the grievances Butler alleges that he *did* file—dated, March 9,

2020; March 29, 2020; March 31, 2020; and April 30, 2020—each of those (except for the

one dated April 30, 2020) were either addressed by rejection (and not appealed) or

"fully granted" at the administrative level. [Doc. 1-1, pp. 18–21]; *see also* [Doc. 35-2, p.

25]. So, the only grievance of concern as to whether Butler exhausted *anything*

potentially related to a medical issue is his grievance dated April 30, 2020. [Doc. 35-2, p. 25 (describing a grievance created on 4/30/2020 as "Medical")]. Hold tight, that grievance will be discussed in detail below.

Before getting there, it bears noting that in his first Order and Recommendation [Doc. 5] in this case, the magistrate judge adhered to the requirement that courts must accept a plaintiff's factual allegations as true. [Doc. 5, p. 6 ("When conducting preliminary screening, the Court must accept all factual allegations in [a] complaint as true.")]; *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). Based off Butler's own allegations, the magistrate judge described Butler's claims as "aris[ing] from his treatment at . . . Central State Prison . . . beginning on or about January 12, 2021[,] and continuing until [April 1, 2022]." [Doc. 5, p. 3]. Throughout the duration of this case, the magistrate judge and the Medical Defendants relied upon the timeframe *Butler* provided in his Complaint while bearing in mind the many ancillary dates he included to tell the Court and the Medical Defendants his concerns about his blood pressure medication. Even during his deposition, Butler confirmed that the claims in this lawsuit are "complaints about how [he has] been treated medically *since January 2021.*" [Doc. 35-1, Butler Depo., p. 18:10–16] (emphasis added). So, without question, Butler, and Butler alone, limited the relevant timeframe of this lawsuit from January 12, 2021, until April 1, 2022. [Doc. 1, p. 5].

Following the magistrate judge's preliminary review of Butler's Complaint,

Butler never raised his hand to tell the Court that he actually meant for this lawsuit to concern dates, events, and injuries that occurred *before* January 12, 2021. From the initial screening, Butler has remained silent and tacitly accepted how the magistrate judge (based on Butler's allegations) "categorize[d]" this lawsuit. [Doc. 35-1, Butler Depo., p. 18:24–25]. One must keep in mind that Butler testified, under oath, that the magistrate judge's preliminary review of his lawsuit was a "fair way to categorize it." [*Id.*]. Thus, he allowed the Court and the Medical Defendants to rely on the timeframe he chose. Consequently, Butler cannot change course via arguments in his brief opposing the Medical Defendants' summary-judgment motion to create some amorphous and ambiguous timeline as to *when* and *what* he is suing for actually took place. *Gilmour*, 382 F.3d at 1315. Again, it's never a court's obligation (and it sure ain't a defendant's obligation) to fashion a plaintiff's claims for him so that he can sustain (or salvage) a cause of action. *Campbell*, 760 F.3d at 1168–69 (11th Cir. 2014).

Ever mindful of the Court's obligation to "construe pro se pleadings liberally," construing Butler's efforts to push back the timeframe of his Complaint in his Objection as a motion to amend doesn't quite fit the bill given the procedural posture of this lawsuit. *Newsome*, 256 F. App'x at 344; *Tannenbaum*, 138 F.3d at 1263. For one, it's well past the responsive-pleadings stage, so Butler couldn't amend as a matter of course, dwindling his options to "the opposing party's written leave or the court's leave." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 869 (11th Cir. 2010); Fed. R. Civ. P. 15(a).

Assuming—for purposes of this potential "amendment"—that leave of court would be the likely route, courts should freely allow such an amendment "when justice so requires." Fed. R. Civ. P. 15(a)(2). While discretion whether to grant leave to amend a complaint is committed to the trial court, the Supreme Court advises that "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" are factors that contravene the liberal policy of permitting leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the prejudice to the Medical Defendants seems quite clear. Not only did Butler never clarify the supposed timeframe he intended for this lawsuit following the Court's preliminary screening, but he even confirmed the more narrow timeframe of his claims during his deposition. [Doc. 35-1, Butler Depo., p. 18:10–16]. Not only would expanding Butler's timeframe sua sponte this late in the game create the need for substantial discovery on top of what has already been completed for his claims, but it "may create the impression that [the Court] has become [Butler's] advocate." *Miccosukee Tribe*, 716 F.3d at 559.

Thus, the magistrate judge and the Medical Defendants rightfully assumed that Butler "claims that [the Medical Defendants] failed to provide his blood pressure medication in a timely way [which] caused him to experience symptoms of high blood pressure . . . *on January 12, 2021*." [Doc. 56, p. 3] (emphasis added). Given the advanced

stage of this case, leave for Butler to amend his Complaint would be denied. *Dipietro v. Barron*, Nos. 4:18-CV-00179-CDL-MSH, 4:20-cv-00035-CDL-MSH, 2022 WL 2873394, at *1 (M.D. Ga. July 21, 2022) (citing *Nolin v. Douglas Cnty.*, 903 F.2d 1546, 1550–51 (11th Cir. 1990), *overruled on other grounds by McKinney v. Pate*, 20 F.3d 1550 (11th Cir. 1994)). Operating within the timeframe that Butler chose and specified in his Complaint, confirmed in his deposition, and never—until now—even hinted was different, the Court agrees that he failed to exhaust his administrative remedies "concern[ing] any issue pertaining to any non-receipt of his blood pressure medication." [Doc. 53-2, pp. 3–4]. Accordingly, the Court **ADOPTS** the magistrate judge's Recommendation with regards to PLRA exhaustion against the Medical Defendants.

However, although the Court adopts the magistrate judge's Recommendation on PLRA exhaustion for Butler's claims asserted against Medical Defendants, the Court expressly notes that such adoption is not because *Butler* failed to "show that he properly exhausted any grievance related to his [blood pressure medication]." [Doc. 56, p. 26]. Placing the burden on Butler places the burden on the wrong party. Failure to exhaust administrative remedies is an affirmative defense; thus, the burden is on the Medical *Defendants* "to show that [Butler] has not exhausted." *Moore v. Dooly SP Warden*, No. 22-10453, 2023 WL 5927138, at *6 (11th Cir. Sept. 12, 2023) (citing *Whatley v. Smith*, 898 F.3d 1072, 1082 (11th Cir. 2018)).

i.     *Butler's Grievance Filed on April 30, 2020*

Now, back to Butler's grievance filed on April 30, 2020. Butler's grievance history denotes an entry on April 30, 2020, listed as Grievance Number 616061. *See, e.g.,* [Doc. 35-2, p. 25]. Grievance Number 616061, however, is irrelevant to Butler's claims occurring between January 12, 2021, and April 1, 2022, because anything encompassed by that grievance must have necessarily occurred in April 2020. [Doc. 35-2, Chambers Decl., p. 2 ¶ 4 ("An inmate is required to submit [a] grievance . . . no later than ten calendar days from the date he knew, or should have known, of the facts giving rise to the grievance.")]; *see also* [Doc. 1-1, p. 20 (Butler's allegations concerning "a medication refill request" on April 10, 2020)]. Nevertheless, a quick *Turner* analysis lends to the likelihood that Butler properly exhausted this particular grievance.

Pashion Chambers' Declaration [Doc. 35-2] discusses the relevant grievance procedure followed by Georgia prisons since May 10, 2019. [Doc. 35-2, Chambers Decl., p. 1, ¶ 3]. Once a grievance has been timely submitted, prison staff will investigate it and submit a report that is subject to review by the Grievance Coordinator followed by a recommendation to the warden of the prison. [*Id.* at pp. 2, ¶¶ 6–7]. The warden (or the warden's "designee") has 40 calendar days from the date the prisoner submitted his grievance to deliver the warden's decision to the prisoner, with the possibility of a "one-time ten calendar day extension" (if the extension is communicated to the prisoner before the expiration of the initial 40-day deadline). [*Id.* at pp. 2–3, ¶ 7]; *see also Moore v.*

*Dooly SP Warden*, No. 22-10453, 2023 WL 5927138, at *4 (11th Cir. Sept. 12, 2023). The prisoner may file an appeal to the Central Office only after he has either received the warden's rejection of the grievance or the time period has expired for the warden to give the prisoner a decision on his grievance. [Doc. 35-2, Chambers Decl., p. 3, ¶ 8]. As to a prisoner's deadline for filing an appeal, the prisoner must do so within seven days of receiving the warden's decision, although an appropriate official can waive this time limit for good cause. [*Id.*]. Finally, after submission of an appeal to the Central Office, the Georgia Department of Corrections' Commissioner or his "designee" has 120 calendar days to render a decision. [*Id.*].

Under *Turner*'s first step, a complaint is subject to dismissal if a prisoner's "factual allegations, taken as true, demonstrate a failure to properly exhaust administrative remedies." *Moore*, 2023 WL 5927138, at *6 (citing *Turner*, 541 F.3d at 1082). Accepting Butler's factual allegation as true—which the Court must do—it's clear that he filed a grievance on April 30, 2020, and dismissal for failure to exhaust is not warranted under step one. *Id.*; [Doc. 55-2, pp. 2, 11]. So now, under step two, the Court must make "specific findings to resolve factual disputes and determine, based on these findings, whether [Butler] exhausted administrative remedies." *Moore*, 2023 WL 5927138, at *6 (citing *Turner*, 541 F.3d at 1082). Butler contends that "[t]he warden fail[ed] to respond within the 40 days as required, nor did he request an extension." [Doc. 59, p. 4]. At that point, Butler argues that he "appealed the grievance to 'Central

16

Office' [which] provided [its] response on July 30, 2020." [*Id.*]; [Doc. 1-1, p. 21 (noting that the appeal was answered on July 30, 2020)]. Easily enough, the record evidence confirms that Butler's grievance history lists Grievance Number 616061 as "Medical" and—consistent with his allegations—that grievance bears an "Appeal" notation. *See, e.g.,* [Doc. 35-2, p. 25]. This certainly lends to the logical indication that Butler appealed the grievance he filed on April 30, 2020, and likely exhausted that grievance. But again, it's not relevant to the timeframe Butler chose for *this* lawsuit.

### ii.    *Butler's Grievance Filed on March 31, 2021*

But there's another grievance that comes in the mix. Grievance Number 728171 is the only other grievance classified as "Medical" filed between January 12, 2021, and April 1, 2022—on March 31, 2021, to be clear. Grievance Number 728171, however, was "in reference to" his hand injury, not his blood pressure medication. [*Id.*]. With Butler providing the timeframe of when the incident giving rise to this lawsuit took place, the Medical Defendants simply had no way of knowing that he intended to rely on Grievance Number 616061—a grievance submitted nearly a year outside the timeframe delineated by his Complaint—to support his contention that he exhausted his administrative remedies regarding his medication concerns that occurred between January 12, 2021, and April 1, 2022. [Doc. 1, pp. 5–6].

In sum, after reviewing the record evidence, there is nothing to show that Butler submitted a grievance referencing his lack of blood pressure medication concerning the

relevant timeframe—between January 12, 2021, and April 1, 2022. Accordingly, the Medical Defendants have met their burden to show that Butler did not exhaust with respect to any alleged delay in receiving blood pressure medication. *Whatley*, 898 F.3d at 1082; *Varner*, 11 F.4th at 1258 (noting that "defendants have the burden of proof" as to whether a prisoner "exhausted his available administrative remedies").

However, even if the Court is wrong in holding that Butler cannot use an exhausted grievance as a last-stitch effort to expand the timeframe of his Complaint at the summary-judgment stage, his claims against the Medical Defendants are still subject to dismissal. For the reasons discussed below, the Court agrees with the magistrate judge that Butler cannot show that the Medical Defendants were deliberately indifferent to a serious medical need.

### b.  Deliberate Indifference

According to his Objection, Butler's overarching position is that the delay of his blood pressure medication caused his hand injury on January 12, 2021, and that each time his "blood pressure elevates[,] it causes [him] to suffer from dizziness, blurr [sic] eyes, nose bleed [sic], rapid heartbeat[,] and memory loss." [Doc. 59, p. 6]. "First off, deliberate indifference—from a constitutional standpoint—is a difficult standard for a prisoner to meet." *Boddie v. Saldana*, No. 5:19-cv-00027-TES-CHW, 2021 WL 2690076, at *7 (M.D. Ga. June 30, 2021) (citing *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007)). Deliberate indifference "is not a constitutionalized version of common-law negligence."

*Boddie*, 2021 WL 2690076, at *7 (quoting *Swain v. Junior*, 961 F.3d 1276, 1287–88 (11th Cir. 2020)). In proving deliberate indifference to a serious medical need,

> a prisoner shoulders three hefty burdens: (1) showing an objectively serious medical need (one diagnosed by a physician as mandating treatment or one that is so obvious and so easily recognizable that a lay person would know that a doctor's attention is needed); (2) of which the prison official was subjectively aware and disregarded (deliberate indifference); and (3) that the harm was caused by the prison official's wrongful conduct—by his deliberate indifference.

*Boddie*, 2021 WL 2690076, at *7 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)). Although the magistrate judge acknowledged that "the evidence is sufficient to support a finding that [Butler's] hypertension and blood pressure concerns were a serious medical need," he nevertheless recommended that the Medical Defendants' summary-judgment motion be granted since Butler "cannot show that [they] acted with deliberate indifference or that his alleged in jury was caused by [their] conduct." [Doc. 56, p. 28].

With the first element met, Bulter must also show that the Medical Defendants were subjectively aware of and disregarded his hypertension and the symptoms allegedly caused by it. *Boddie*, 2021 WL 2690076, at *7 (citing *Goebert*, 510 F.3d at 1326). There's no doubt that Bulter alleges he made several complaints about him not receiving his blood pressure medication on time. *See, e.g.*, [Doc. 1-1, pp. 7–13]. But what's missing from this case is any evidence that the Medical Defendants "arbitrarily refuse[d]" or intentionally refused to provide Butler with his medication. *Newsome*, 256

F. App'x at 346 (first citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); and then citing *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989)).

The crux of Butler's alleged constitutional violation—in his own words—is that he sometimes has to "wait too long" on refills. [Doc. 35-1, Butler Depo., p. 38:4–9]. Folks all across this country experience delays in receiving their medications, whether it be due to a backorder from the manufacturer, a disruption in the supply chain, or just that someone forgot to order it when the pharmacy got low. There could be any number of reasons for this common frustration of everyday life. Here, Butler would have the Court ascribe the worst of all motives to the Medical Defendants—they had the medication in stock and refused to give it to him just to injure him. In other words, they wouldn't give him his blood pressure medication for any other reason than to be needlessly cruel. Butler, however, bears the burden on that point and based on this record, even drawing all justifiable inferences in his favor, the Court finds that he hasn't met that burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Again, countless—yet constitutionally permissible—reasons may contribute to delays of medication, but the only justifiable inference that can be inferred by this record is that the Medical Defendants may have been backlogged in reordering medications or they simply just forgot to place orders for certain refills on time. To be sure, the Court recognizes Butler's allegation that his medication "order" had "been

rejected." [Doc. 1-1, p. 13]. Still though, there's no evidence—not even an allegation—that it was any of the Medical Defendants who rejected that order. At the end of the day, there's nothing in the record to support the inference that the Medical Defendants willfully, arbitrarily, or purposefully impeded the refill process for Butler's medication. [Doc. 35-1, Butler Depo., pp. 33:7—37:22]. In fact, Butler's own Affidavit [Doc. 55-3] details each and every delay, but nowhere in it does he mention any wrongful conduct from the Medical Defendants that could lead to an inference that they caused those delays through deliberate indifference. *See generally* [Doc. 55-3]; *Boddie*, 2021 WL 2690076, at *7 (citing *Goebert*, 510 F.3d at 1326). Thus, as the magistrate judge concluded, the delayed receipt of blood pressure medication, under the facts of this case, presents nothing more than a scenario in which the Medical Defendants were possibly negligent. [Doc. 56, p. 29]. And, as discussed above, negligence is not a *constitutional* misstep. *Swain*, 961 F.3d at 1287–88.

Finally, where an inmate complains that delay in medical treatment rose to a constitutional violation, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *McDaniels v. Lee*, 405 F. App'x 456, 458–59 (11th Cir. 2010) (citation omitted). As noted by the magistrate judge, Butler fails to provide any verifying medical evidence to connect his symptoms of "dizziness, blurr [sic] eyes, nose bleed [sic], rapid heartbeat[,] and memory loss" to his high blood pressure. [Doc. 59, p. 6]; [Doc. 56, p. 29]. And, without

such evidence, Butler cannot show that those symptoms, or injuries, were caused by a delay in him receiving his medication.

Again, as the magistrate judge concluded, Bulter cannot show that the Medical Defendants were deliberately indifferent to a serious medical need. [Doc. 56, pp. 27–29]. That begins and ultimately ends the Court's analysis with the issue of whether the alleged constitutional violation was contrary to clearly established law for a qualified immunity inquiry. *See Washington v. Warden*, 847 F. App'x 734, 737 (11th Cir. 2021) (per curiam). Based on a de novo review of the record, the Court also **ADOPTS** the magistrate judge's Recommendation that the Medical Defendants' summary-judgment motion be granted on the basis that Butler "has failed to show that [they] were deliberately indifferent to his serious medical needs" and that the Medical Defendants are, therefore, entitled to qualified immunity. [Doc. 56, p. 29].

### 3.   Conclusion

Consistent with the above rulings the Court **OVERRULES** Butler's Objection based on Rule 72, **ADOPTS** the United States Magistrate Judge's Recommendation [Doc. 56], and **GRANTS** Defendant Juanita Yvette Williams Thorpe's Motion for Summary Judgment [Doc. 35] and Defendants Calisha Calloway, Aundria Collins, and Eugenia Smith's Motion for Summary Judgment [Doc. 53]. The Court **DIRECTS** the Clerk of Court to **ENTER** Judgment accordingly and **CLOSE** this case.

**SO ORDERED**, this 28th day of September, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**